

October 1, 2022

**By ECF and Email**
Hon. Katherine Polk Failla
Thurgood Marshall
United States Courthouse
40 Foley Square, Room 2103
New York, NY 10007
failla_nysdchambers@nysd.uscourts.gov

      Re: *The Capital Markets Company, LLC v. Isaac Halpern,* 1:22-cv-07637-KPF

Dear Judge Failla:

We write in brief response to John Barry's letter, which we believe misstates and/or twists the record and counsel's communications, and instead of just proposing a schedule includes an improper motion to quash.  In Your Honor's ruling you stated:

> **A separate issue, but, of course, related, that was raised by the parties concerns the propriety and the extent of expedited discovery.  I haven't decided that issue** because I understood that in issuing a decision today, the parties might want to discuss with themselves, and perhaps across the aisle, to see whether there were appellate issues or notices of appeal or other applications that might be filed.  But what I'd like you to do is to consider the decision I've issued today, decide how you're going to react to it, and then decide how you want to proceed in the near term.  **If, for example, the parties -- if one side is taking, and I guess the one side would be CAPCO, is going to take an appeal, that might stop the proceedings currently before me.  If they elect not to, the parties could either agree on a discovery schedule or not agree on a discovery schedule, agree on a schedule for the briefing and conduct of a preliminary injunction hearing or not, but I would like you at least to discuss those things and to get back to me. I'd like a letter no later than September 30th.**  My preference is, of course, for a joint letter, but if the parties can't agree, and can't even agree to include both sides' positions in the letter, they can send me two letters. I'm giving you September 30th as an outside date; certainly, if you'd like to send me something sooner, I will receive the letter then. (Emphasis added)

Mr. Barry's letter to Your Honor yesterday states early on: "The parties have conferred in an attempt to reach an agreement regarding a schedule for expedited discovery but have been unable

to reach a resolution. The parties spoke on September 20, 2022 to discuss a schedule for expedited discovery..." Of course, this erroneously assumes the conclusion: that Your Honor directed expedited discovery – which Your Honor did not. Nor did we ever agree to, and indeed, opposed, and still oppose, same (*see* pages 22-25 of Mr. Halpern's opposition brief).

Nothing has changed since we were last before Your Honor, except that Mr. Halpern has started to earn a living again. I spoke with him this morning and he has informed me that he has not yet had a single communication with any EYP client. While that will change, it will not change that he states he will honor the commitments he made to the Court.

While Mr. Barry wades too far into counsel's discussions, which we had in good faith to try to reach a consensual, sensible path but which he and his firm now seem to have had, at least, in part to secure snippets of our communications to use out of context, the bottom line is that while we believe Capco – who has not appealed – is unlikely to succeed on a preliminary injunction for the reasons Your Honor explained in your oral decision, just as we did in our initial papers, we have proposed that all depositions be limited to three hours.

In response to Mr. Barry's request that the parties' written discovery be limited to 10 interrogatories and 10 document requests, while we thought interrogatories unnecessary given the depositions, we compromised at 5 so long as they are consistent with the local S.D.N.Y. rules (for example, seek to identify witnesses). As for document demands, we did not agree to Mr. Barry's request to limit it to 10 as we had not started drafting them and because it is manifest that the vast majority of discoverable documents will be in Capco's possession. Capco knows this and, in our view, is trying to strategically circumscribe Mr. Halpern's ability to defend a motion *that they are bringing*, a motion we believe should not be brought, is not likely to succeed, and is being brought for improper reasons.

Relatedly, we believe Capco's request that we be precluded from conducting the deposition of Lance Levy should be summarily denied, and if Your Honor is to entertain it at all, that it requires full briefing (which will delay discovery). Capco is now asking for the draconian relief of an affirmative injunction – to pull Mr. Halpern from work – and at the same time is trying to limit discovery. It is Capco that argued that Mr. Halpern was so unique – "given his [alleged] pinnacle position within the company" (at p. 25 of the September 14, 2022 oral argument transcript) and that "Capco employs over 1200 employees in the United States. Mr. Halpern is one of 21 partners… He's a member of Capco's Leadership Team" (*Id.* at 13). While we believe that Mr. Barry inflated Mr. Halpern's status, value and internal engagements in an effort to secure a TRO, and that Capco has not suffered a scintilla of harm, let alone irreparable harm, since Mr. Halpern left about two months ago, we are entitled to obtain discovery on these and other issues from Mr. Levy. In this regard, while Your Honor confined your holding on the TRO to the alleged issues of uniqueness, customer interaction, role, and confidential information, Mr. Halpern's other defenses available under legal precedent remain very much available.

By way of example, Mr. Levy's deposition is necessary to demonstrate that – despite Capco's assertion that Mr. Halpern had a unique role as "Head of Strategy" and the alleged irreparable

harm Capco will sustain – Mr. Halpern's role was in fact much more limited, primarily leading the market-facing Strategy Practice, and that his internal strategy role was also limited. As CEO and chair of the Global Leadership Team ("GLT"), Mr. Levy is in a unique position to speak to GLT governance, the degree of Mr. Halpern's direct participation (or lack thereof), and the fact that another individual (Zoe Charlier) is the Head of Capco Corporate Strategy and a member of the GLT (which Isaac was never a member of and participated on about once a year).

Further, in Mr. Halpern's opposition affidavit he testifies that "Mr. Levy addressed the numerous concerns by Partners" over Capco's breach of the compensation representations made to retain such Partners given its WIPRO acquisition." (Halpern Aff. at Para. 23).  Mr. Levy's deposition is necessary to demonstrate that Capco actively misled Mr. Halpern (and its other partners) for ~one year about the nature of the newly constituted management incentive plan, breaching the contract. The management incentive plan ('MIP"), along with the LTIP referenced in the BPA, is directly communicated within the BPA and supporting communications in 2018 as the primary benefit provided to associate partners and partners in return for agreeing to new restrictions (in fact, when Mr. Halpern made associate partner and first signed the BPA, his base compensation only increased by $50K). When the new MIP was announced in 2021, it effectively replaced the compensation structure originally communicated in conjunction with Mr. Halpern's (and other new associate partners or partners) signing the BPA.  In July 2022, Mr. Ethelston confirmed to Mr. Halpern that the structure was changed because it had been prematurely communicated (meaning that Mr. Levy was aware of the miscommunication for many months but failed to correct it). Mr. Levy was directly and personally responsible for compensation decisions, compensation communication decisions, and senior personnel decisions, including the exits of the former global head of HR, former COO, and former managing partners of Canada and the US regions, which likely resulted due to disagreements about the structure, communication and transparency related to the newly published management incentive plan. Therefore, Mr. Levy's deposition is critical to substantiate the rationale for changing the published compensation structure, and if in doing so Capco intentionally misled its partner team about the nature of the newly constituted MIP to act as a retention inducement, and in doing so effectively breached its contract.  This is an inextricably intertwined issue in this case, as under the law a Capco breach or fraud would bar enforcement of an otherwise enforceable covenant.

Finally, Mr. Levy is also in the position to address Capco's failure to seek injunctive relief against many other "partners" who signed the same BPA and who left before Mr. Halpern, as selective enforcement has been held to be relevant to claims of protectible interest and irreparable harm, lynchpins to the severe relief Capco seeks.

In short, Mr. Levy should not be allowed immunity from testifying while he leads the charge to keep Mr. Halpern from working and providing for his family.

                        Respectfully,

                        /s *David B. Wechsler*
                        David B. Wechsler